IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–01231–CMA–KMT

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

     Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE,

     Defendant.

---

## ORDER

---

This matter is before the court on "Defendant United States Olympic Committee's Motion to Stay Proceedings" ("Mot.") [Doc. No. 10] filed May 31, 2019. "Plaintiff's Response to Defendant's Motion to Stay Proceedings" ("Resp.") [Doc. No. 17] was filed June 14, 2019, and "Defendant United States Olympic Committee's Reply in Support of Motion to Stay Proceedings"("Reply") [Doc. No. 21] was filed June 21, 2019. A scheduling conference was noticed for July 9, 2019, but was vacated pending ruling on the instant motion. [Doc. No. 15.]

In this insurance rescission case brought by Philadelphia Indemnity Insurance Company ("PIIC"), Defendant United States Olympic Committee ("USOC") requests that the court stay proceedings until after the resolution of the numerous underlying cases to which the insurance policies at issue may or may not be applicable. Defendant claims that allowing PIIC to proceed at this time would impermissibly prejudice the USOC in defending the cases below and as

grounds claims 1) this case would not "fully and finally resolve the uncertainty and controversy as to *all* parties with a substantial interest in the matter" including numerous alleged plaintiffs who claim to be victims of abuse as well as defendant in many of the cases, USA Gymnastics, the national governing body for gymnastics, which is currently in the midst of bankruptcy proceedings (Mot. at 2), and 2) this case is "inextricably intertwined with the claims currently pending against the USOC in courts across the country – the vast majority of which have been stayed as part of USA Gymnastics' bankruptcy ."[1]  (*Id.*)  Plaintiff responds that forcing PIIC to fund the defense for multiple tort actions bought in numerous jurisdictions when PIIC is claiming rescission of the insurance coverage in whole as a result of alleged misrepresentations by the USOC prejudices PIIC.  (Resp at 1.)

### Background

The USOC is a corporation whose fifteen authorized purposes include, among others,

(2) to coordinate and develop amateur athletic activity in the United States, directly related to international amateur athletic competition, to foster productive working relationships among sports-related organizations;
(3) to exercise exclusive jurisdiction, directly or through constituent members of committees, over--
     (A) all matters pertaining to United States participation in the Olympic Games, the Paralympic Games, and the Pan-American Games, including representation of the United States in the games;
     . . .
(15) to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete.

36 U.S.C.A. § 220503 (See Pub. L. 115-126, Title II, § 201, Feb. 14, 2018, 132 Stat. 320.)  The USOC "shall establish and maintain provisions with respect to its governance and the conduct of its affairs for reasonable representation of -- (1) amateur sports organizations recognized as

---

[1] USA Gymnastics is not a party to this case.

national governing bodies and paralympic sports organizations . . ." 36 U.S.C. § 220504(1).  For

any sport which is included on the program of the Olympic Games, the Paralympic Games, or

the Pan-American Games, the USOC "is authorized to recognize as a national governing body

["NGB"] . . . [one] amateur sports organization. . . . ."  36 U.S.C. § 220521(a).  "For the sport

that it governs, a national governing body may -- ", *inter alia*,

> (2) establish national goals and encourage the attainment of those goals;
> (3) serve as the coordinating body for amateur athletic activity in the United
> States;
> (4) exercise jurisdiction over international amateur athletic activities and sanction
> international amateur athletic competition held in the United States and sanction
> the sponsorship of international amateur athletic competition held outside the
> United States;
> (5) conduct amateur athletic competition, including national championships, and
> international amateur athletic competition in the United States, and establish
> procedures for determining eligibility standards for participation in competition,
> . . . ;

36 U.S.C. § 220523(a).

Within the past several years numerous parties have filed suit seeking to hold the USOC

legally responsible for the sexual abuse committed against Olympic athletes, including that

perpetrated by disgraced physician and convicted felon Larry Nassar against gymnasts as well as

individuals affiliated with two other sports, taekwondo and weightlifting.  (Mot., Ex. 1, [Doc.

No. 10-1] underlying lawsuit list.)  These lawsuits are typically predicated on allegations that the

USOC knew or should have known about, and done more to stop, abuse taking place within those sports.  PIIC is one of the USOC's insurers.[2]

In this rescission case PIIC states that the two policies it issued to USOC contained the application question, "Has your organization ever had as (sic) incident which resulted in an allegation of sexual abuse?," to which the USOC responded, "No." and upon which the USOC further elaborated, "Based on the USOC's understanding of appropriate definitions of sexual abuse, there have been no incidents."  (Compl. [Doc. No. 1] at ¶¶ 15-17).  PIIC claims the USOC controls the NGBs, including USA Gymnastics, to the point of being legally indistinguishable from them (*id*. at ¶¶ 24–26), that the USOC knew about and should have done something different concerning abuse occurring in various Olympic sports (*id*. at ¶¶ 30–54), and that the USOC had knowledge of Nassar's criminal conduct when it applied for insurance from PIIC in 2015 (*id*. at ¶ 55).[3]  PIIC claims that its "decision to issue the policies was made in reliance on the USOC's representations and it would not have issued the policies if it had truthful information."  (*Id*. at ¶ 62.)  PIIC claims "the USOC concealed material facts with the intent that PIIC take a course of action – namely, issue liability insurance to cover sexual or physical abuse

---

[2] PIIC denied coverage for USA Gymnastics claiming among other things that it "does not qualify as insured: under the subject policies' sexual or physical abuse or molestation coverage. (Resp. at 15-16.)  According to PIIC, even though USA Gymnastics listed PIIC in its bankruptcy estate, when USA Gymnastics brought a separate declaratory judgment action against its insurers for breach of contract in connection with actions filed against it involving Nassar, USA Gymnastics did not include PIIC in that action.  (*Id*.)

[3] The court notes that PIIC's position refusing coverage for USA Gymnastics under the USOC policy because the NGB is not part of the USOC and therefore is not an "insured" is at odds with its position here that the USOC should have acknowledged that there had been abuse indications within the NGBs related to athletes and their trainers or coaches when responding to questions concerning "your organization" in the application.  However that is an observation related to the merits which will have to await another day for resolution.

or molestation – that it would not have taken if PIIC had known the actual facts.  (*Id.* at ¶ 85.)
PIIC seeks to rescind the insurance policies it issued by returning the $130,445.00 premium paid
for policy number PHPK1330247, and the $27,760.00 premium paid for policy number
PHUB498238.  (*Id.* at ¶ 80.)

The USOC claims, *inter alia*, that the underlying lawsuits confuse and conflate the
USOC with the NGBs, implicitly suggesting that the USOC is operationally and legally
responsible for the more than three million NGB members and tens of thousands of NGB staff
and volunteers.  (Mot. at 2.)  The legal relationship between the USOC and the NGBs and their
staff and athletes participating in the sports represented is obviously an important liability
component of both this case – which concerns the contract of insurance between the USOC and
PIIC – and the underlying cases, where often both the USOC and the relevant NGB(s) and others
are defendants.  In this case, however, the focus is on what was meant by "your organization" at
the time when the USOC applied for and obtained the PIIC insurance policies verses the focus of
the underlying cases on 1) what, if anything, the USOC knew or should have known about
allegations of abuse in and through the various NGBs and 2) the USOC's legal obligations, if
any, to recognize and stop abuse within both the governance, management and participation in
Olympic sports through the NGBs.  While the issues are somewhat interknit, especially
concerning what the USOC was legally required to know and address with respect to alleged
athlete abuse in Olympic sports at the time it obtained the PIIC insurance, they are not
interdependent.

*ANALYSIS*

**A.      Colorado River** *Abstention*

The parties both address the ability a District Court to stay a federal suit out of deference to parallel litigation brought in state court pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976).  *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13 (1983).  In *Colorado River* the government brought suit in federal court to adjudicate federal water rights, suing 1000 non-federal water users.  A defendant in that suit sought to join the United States in a state-court proceeding for the comprehensive adjudication and administration of all water rights within the river system that was the subject of the federal court suit.  The Supreme Court ultimately held that dismissal of the federal action was proper on "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' "  *Colo. River*, 424 U.S. at 817.

Except in specialized circumstances, however, as between state and federal courts "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Id*.  And, in fact, the Supreme Court has acknowledged a virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.  *Id*.  The key for application of *Colorado River* abstention is the presence of two specialized circumstances: concurrent tribunals and parallel proceedings.  Neither condition alone is sufficient.

Here the vast majority of the underlying cases have been brought in federal court, not state court.[4]  As to those cases, there is no concurrent tribunal; rather, there are simply several different federal district courts sitting in different jurisdictions.  As between divergent federal district courts, the considerations of deference by any one court to another are not the same as abstention under *Colorado River*.  Instead those courts must consider the general goal of avoiding duplicative litigation.  *Id.* (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).  This is the principle behind consolidation in multi-district litigation.

Additionally, in this case the parties both agree that as to <u>all</u> of the underlying cases, federal or state, those actions are simply not parallel to the federal case.  PIIC points out that it is not a party to the underlying actions and that its "claims for rescission, fraud and breach of contract are not parallel to the Tort Litigation against the USOC because the actions do not involve the same parties and the actions raise substantially different factual and legal issues." (Resp. at 9.)  Defendant/Movant USOC agrees, stating

> *Colorado River* is potentially relevant only when there is "parallel" litigation, *i.e.*, a related action proceeding *in state court* between the same parties.  However, as PIIC admits, *not one* of the "underlying" cases here is "parallel" to PIIC's insurance coverage action within the meaning of *Colorado River*, as discussed.

(Reply at 2, emphasis in original.).  The parties therefore appear to agree – and this court concurs – that the *Colorado River* abstention doctrine does not apply under these facts, and this court finds analogies thereto to be inapposite.

---

[4] Forty-two of the forty-four underlying cases pending at the time the Motion was filed are proceeding in federal court, not state court.  (See Mot, Ex. 1 at 3-7; Reply at 5.)

**B.**     ***String Cheese Incident Stay***

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings.

Rule 26(c), however, permits a court to "make an order which justice requires to protect a party

. . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P.

26(c).  Further, "[t]he power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Landis* at 254-55 (citing *Kan. City S. Ry. Co. v. United

States*, 282 U.S. 760, 763 (1931)).

In this District, a stay of discovery is generally disfavored.  *See, e.g.*, *Rocha v. CCF

Admin.*, No. 09-cv-01432, 2010 WL 291966, at *1 (D. Colo. Jan. 20, 2010); *Jackson v. Denver

Water Bd.*, No. 08-cv-01984, at *1 (D. Colo. Dec. 15, 2008); *Chavez v. Young Am. Ins. Co.*, No.

06-cv-02419, at *2 (D. Colo. Mar. 2, 2007).  Nevertheless, the decision whether to stay

discovery rests firmly within the sound discretion of the court.  *United Steelworkers of Am. v. Or.

Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis*, 299 U.S. at 254).

The suppliant for a stay must make out a clear case of hardship or inequity in being

required to go forward if there is even a fair possibility that the stay for which he prays will work

damage to someone else.  *Landis*, 299 U.S. at 255.  Only in rare circumstances will a litigant in

one cause be compelled to stand aside while a litigant in another settles the rule of law that will

define the rights of both.  *Id.*

In ruling on a motion to stay discovery, five factors are generally considered: "(1) [the]

plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice

to [the] plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4)

the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 8949955, at *2 (D. Colo. Mar. 30, 2006); *see United Steelworkers*, 322 F.3d at 1227.

This case, however, arises in the unique circumstances of insurance coverage which often is raised early in the proceedings concerning the insurer's duty to defend its insured even where the insurance company exercises a reservation of rights to contest liability for a damage award should the insured be found liable.

> The duty to defend pertains to the insurance company's duty to affirmatively defend its insured against pending claims. The duty to indemnify relates to the company's duty to satisfy a judgment entered against the insured. The duty to defend is triggered more easily than is the duty to indemnify. Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm. Where there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.

*Addison Ins. Co. v. Maynard*, No. CIV.A. 08-CV-00054-W, 2008 WL 2079143, at *3 (D. Colo. May 15, 2008). Many of the cases in this area deal with declaratory judgment actions concerning the coverage provisions and/or exclusions of a specified policy. *See Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 561 (Colo. 1996) (en banc), *as modified on denial of reh'g* (Jan. 13, 1997). However, *Constitution Associates* and its progeny do not involve rescission of an insurance policy based on wrongdoing by the putative insured nor do they address the deference to be given in a case involving multiple cases arising across multiple jurisdiction. PIIC does not simply seek a determination of its rights with respect to one particular claim (or in this case numerous claims) in one lawsuit; to wit, what the contracts of insurance say or do not say and the meaning thereof. Plaintiff PIIC claims misrepresentations

were made by the USOC in two insurance <u>applications</u> which, had the applicant been truthful, would have resulted in non-issuance of the policies.  There simply would have been no insurance contracts to interpret.  PIIC seeks to void the policies in their entirety, and effectively enjoin the USOC from enforcing the policies in any pending or future litigation regarding any topic.

The court therefore does not find *Constitution Associate*s particularly instructive and determines that the issue of a stay in this case should be decided by consideration of the *String Cheese Incident* factors.

### 1.    *Plaintiff's Interests*

PIIC is, apparently, denying any duty to defend USOC and is refusing to pay for USOC's defense of the underlying cases.  (Reply at 3.)  In a normal case where the coverage provisions of an insurance contract are at issue, the insurance company generally will nonetheless fund and control the defense of its insured as a way to protect itself (and its insured) in the event of a liability award for which the company might be ultimately responsible.  Here, however, because this is a rescission action, the company has lost the ability to control the defense of the litigation altogether because the allegation is that the policies would never have been issued but for the misrepresentations of the insured.  Therefore, the Plaintiff is prejudiced greatly by delay in that it is not in control of USOC's litigation defense in 44 or more cases, but yet the company might be ultimately liable for multiple damage awards (and defense costs) should PIIC not prevail in this case and should the USOC lose in the underlying actions.  In short, unless this case is decided with some alacrity, PIIC bears the risk of being assessed all costs of defense and responsibility for liability damages without any concomitant ability to contribute to litigation decision-making.  Outside of resolution of this case, PIIC's conundrum can only be remedied if PIIC steps in and

takes on the defense of the 44+ cases on behalf of USOC at enormous cost, in spite of its contention that the policies should be rescinded in full.  This is a quintessential Hobson's Choice.

Therefore, the first factor weighs heavily against a stay.

### 2.      *Burden on the Defendant*

The defendant, also, is greatly prejudiced by a delay here, although as proponents of the stay they do not argue as such.  Although under the two questioned policies of insurance the USOC has a right to have its defense paid for by its insurance company (if the policies are not rescinded), PIIC is apparently refusing to fund defense costs, even under a reservation of rights in connection with liability.  (Reply at 3.)  Should the USOC prevail in this case, the USOC could be entitled to have an insurance paid defense in the underlying cases.  Alternatively, if USOC does not prevail in this case and the policies are rescinded, the USOC will benefit by knowing it lacks PIIC insurance and having the opportunity now, rather than perhaps years down the road, to consider whether bankruptcy or other collateral actions in lieu of costly defense of each individual case below is appropriate.  Finally, Defendant admits that most of the underlying cases are stayed as a result of the automatic stay associated with USA Gymnastic's bankruptcy (Mot. at 3) resulting in this being essentially the perfect time to have this collateral matter proceed.[5]  Thereafter, the parties can make more fully informed litigation decisions when the automatic stays associated with bankruptcy proceedings are lifted.

This factor weighs against a stay.

---

[5] While the delay in the underlying cases ameliorates Defendant's argument regarding prejudice from fighting a two-front war (Mot. at 12), delay in scheduling discovery here caused by the instant motion may have blunted this positive effect to some extent.

### 3.   *Convenience to the Court*

The court is always benefitted by efficient and timely litigation in controlling its docket. As previously noted, there are, at the time the motion was filed, 44 cases involving allegedly abused Olympic athletes asserting claims against the USOC and NGBs and others, pending in different federal jurisdictions and two in state courts.  Each are at different stages of discovery. Most, if not all, are stayed as a result of USA Gymnastic's bankruptcy.

The delay to this case if USOC's motion is granted will be very significant.  Somehow this court will be required to keep track of all the underlying cases and will be at the mercy and whims of other federal district courts, appellate courts, the bankruptcy court, and even several state courts.  In the event of the broad stay contemplated by the defendant's motion, the court will completely relinquish its ability to control its own docket.

This factor weighs heavily against a stay.

### 4.   *Interests of Non-Parties*

The interests of persons not parties to the civil litigation are also enormously adversely affected by failure to definitively determine in this case whether or not several million dollars of insurance coverage will be available to Plaintiffs should they prevail in the underlying cases against USOC.[6]  The availability of insurance and the amount of insurance is likely to greatly

---

[6] Neither party has provided the court with any evidence that USA Gymnastics was a named party to the contract between USOC and PIIC.  The only two parties to the insurance contract, and thus the only two necessary parties to litigation regarding rescission based on false statements in an application, are PIIC and the USOC.  *See* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1613 (3d ed. 2016) (explaining the proper parties to an action for rescission are the parties to the contract).  Any current and future plaintiffs have no say in that determination.  Their claims are speculative until such time as any judgment is entered in their favor against the USOC.  Additionally, those current and potential plaintiffs have no direct claims against PIIC (*see Constitution Associates,* 930 P.2d at 562-63),

influence litigation and settlement strategies for the plaintiffs below.  For some, the outcome of this case may be determinative on whether they even proceed with their individual cases.

This factor weighs heavily against a stay.

### 5.    *Public Interest*

The public has a great deal of interest in the underlying cases and insuring that the country's young athletes are protected should they forego the lure of their own business opportunities in favor of representing the United States at the amateur level.  The public likely has a general interest in insuring that the USOC and all other organizations charged with protecting these young athletes are incentivized to actively work to prevent such wide spread abuse in the future.  But this federal case concerning whether the USOC is covered by two PIIC insurance policies in the event of USOC legal liability is not where the public interest lies.  That said, however, resolution of this case would provide a definitive answer about the funds available to plaintiffs in the underlying cases, at least those where the USOC was a defendant and as noted previously, this knowledge would likely help foster productive and timely settlement discussions which could include non-monetary obligations benefitting young athletes in the future.  Of course, such settlements are at this point are speculative even if visionary.  Resolution of insurance availability disputes which speed up underlying litigation consuming the resources of multiple jurisdictions is, of course, in the public interest.

Therefore, the court finds this factor weighs slightly against a stay.

---

and they can never have any interest in policies that are void.  Therefore, joinder of those parties here is unwarranted.  However, as non-parties, the underlying plaintiffs' interests are addressed here in connection with a stay.

Therefore, considering the *String Cheese Incident* factors which each weigh against a stay of proceedings in this case, it is

      **ORDERED**

1.    "Defendant United States Olympic Committee's Motion to Stay Proceedings" [Doc. No. 10] is **DENIED**.

2.    The court shall hold a Fed. R. Civ. P. 16(b) scheduling and planning conference on **December 9, 2019, at 9:30 a.m. (Mountain Time)**.  The conference shall be held in the Colorado Springs courtroom, Suite 101, 212 N. Wahsatch Avenue, Colorado Springs, Colorado. The parties shall submit their proposed scheduling order, pursuant to District of Colorado Electronic Case Filing ("ECF") Procedures, on or before: **5:00 p.m. (Mountain Time) on December 2, 2019.**  Other than these revised dates for the conference and submission of the proposed scheduling order, the parties are directed to follow the previous directives contained in Document Number 8, "Amended Order Setting Rule 16(b) Scheduling Conference and Rule 26(f) Planning Meeting," filed May 10, 2019**.**

    Dated October 25, 2019.

                                BY THE COURT:

                                Kathleen M. Tafoya
                                United States Magistrate Judge