**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-01231-CMA-KMT

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE,

    Defendant.

---

**DEFENDANT UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE'S STATEMENT REGARDING SUBJECT MATTER JURISDICTION**

---

## I.    INTRODUCTION

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(c) and by virtue of the "sue and be sued" clause in the federal charter of Defendant United States Olympic Committee ("USOPC"). ECF 1 ("Comp.") ¶¶ 4 - 5. These arguments lack merit.

PIIC cannot establish diversity jurisdiction because (1) USOPC is a federally-chartered organization with nationwide operations and (2) Congress has not specified a state of which it is a "citizen" for purposes of diversity jurisdiction. *Fed. Nat'l Mortg. Ass'n v. Amerson*, No. 19-CV-02361-PAB, 2019 WL 4410009, at *2 (D. Colo. Sept. 16, 2019) (citing *Bankers Trust Co. v. Tex. & Pac. R.R. Co.*, 241 U.S. 295 (1916)).

Disregarding the vast body of law that supports this conclusion, PIIC tries to shoehorn its case into an exception that some courts have developed to address the unique circumstances of

tribal corporations organized under the Indian Reorganization Act, 25 U.S.C. § 477. ECF 55 at 8 (citing *Enterprise Elec. Co. v. Blackfeet Tribe of Indians*, 353 F. Supp. 991, 992 (D. Mont. 1973)). USOPC is not a tribal corporation, however, and these cases do not apply here.

PIIC also argues that diversity jurisdiction is created by the so-called "localization exception," which is a "judicially created" doctrine purporting to "extend[] diversity jurisdiction to federally chartered corporations by deeming such corporations citizens of states where their business was localized." *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, 57 F. Supp. 3d 589, 593 (E.D. Va. 2014). However, the Tenth Circuit has not adopted this expanded view of subject matter jurisdiction, and doing so would be contrary to the "well-established" rule that "statutes conferring jurisdiction upon the federal courts . . . are to be narrowly construed in light of [federal courts'] constitutional role as limited tribunals." *Pritchett v. Office Depot., Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005); *see also Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 368 F. Supp. 3d 889, 896 (E.D. Va. 2019) (rejecting the "localization exception" because "diversity jurisdiction cannot be established except on the terms set forth in § 1332(c)."). Even if this Court were to apply the "localization exception," however, PIIC offers no compelling reason to part company from *Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 522 (C.D. Cal. 1983), which long ago found that USOPC is not "localized."

Finally, the "sue and be sued" clause in USOPC's charter does not confer subject matter jurisdiction because it does not expressly allow the filing of an action against USOPC in federal courts. *See, e.g., Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) (a "sue or be sued" clause is construed narrowly, and must specifically confer subject matter jurisdiction).

Rather, it gives USOPC the option to remove actions to federal court, 36 U.S.C. § 220505(b)(9), which has not happened here.

For the foregoing reasons, and as discussed further below, this Court should dismiss this case for lack of subject matter jurisdiction.

## II.  SUMMARY OF RELEVANT FACTS

USOPC is a federally chartered, non-profit organization that coordinates America's athletic and athlete support activity relating to the Olympic, Paralympic, Pan-American, and ParapanAmerican Games.  It operates under the Ted Stevens Amateur Sports Act of 1978 ("ASA"), *S.F. Arts & Athletics v. U.S. Olympic Comm.*, 483 U.S. 522, 544-45 (1987), which establishes USOPC's mission and authority to "establish national goals for amateur athletic activities," "coordinate and develop amateur athletic activity in the United States," and "promote and support amateur athletic activities involving the United States and foreign nations."  36 U.S.C. § 220503(1) - (15).

The ASA also gives USOPC the exclusive right to use and authorize the use of Olympic-related marks, images and terminology in the United States, which enables USOPC to generate revenue in support of its national mission through licensing and broadcasting deals.  USOPC has sponsors based across the United States and indeed throughout the world, including Alibaba (China), Bridgestone (Japan), Samsung (Korea), Omega (Switzerland), and Toyota (Japan).  Declaration of Christopher D. McCleary ("McCleary Decl."), ¶3.  USOPC also has a wide array of other contracting partners, ranging from major corporations such as NBCUniversal (New York), the long-time holder of broadcasting rights for Olympics, to specialty manufacturers of Olympic-branded products, such as Vermont Teddy Bear (Vermont).  McCleary Decl., ¶4.

The ASA empowers USOPC to recognize an organization to serve as each sport's "national governing body" ("NGB"). 36 U.S.C. § 220521. Today, there are 50 NGBs that collectively have millions of members and tens of thousands of staff members and volunteers nationwide. *Id.* at 5. USOPC works closely with these entities in carrying out its mission. *Id*. For example, USOPC partners with and helps support 11 elite training sites spread across 9 states, which enable NGBs to provide top-tier training opportunities to athletes across the country. *Id.* at ¶6. USOPC also operates a facility in Lake Placid, New York, a critical site for Olympic winter sports training that is situated on 29 acres of land with athlete housing and dozens of employees, and maintains a separate business office in New York, where it was headquartered for nearly 80 years before moving to Colorado, and another in Washington DC. *Id*. at ¶7.

USOPC's activities are not confined to the United States. For example, in 2018 it reported nearly $16 million in program services and grant-making expenses in Europe, South America, Caribbean, Africa, Asia, and other locations outside the United States. *Id.* at ¶8. When the Olympics or other games it supports are located in foreign countries, as is common, USOPC has a substantial presence in those countries over a course of months and years, including sometimes through foreign subsidiaries such as *USOC Hospitality, Servicos, Comercio, Importacao e Exportacao LTDA*, which was formed for the 2016 Summer Olympic Games in Brazil. Id. at ¶¶9-10.

### III.   ARGUMENT

### A.   There Is No Diversity Jurisdiction Under 28 U.S.C. § 1332(c).

Controlling United States Supreme Court authority has established that a federally-chartered organization like USOPC is not a citizen of any state, and diversity jurisdiction is therefore impossible because the suit is not between citizens of different states. *Bankers' Tr.*, 241 U.S. at 309–10; *see also Fed. Nat'l Mortg. Ass'n*, 2019 WL 4410009, at *2. For that reason, diversity jurisdiction does not exist in a lawsuit brought against USOPC. *See Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 522 (C.D. Cal. 1983) (because it is a federally chartered organization USOPC is "not a citizen of any particular state" for jurisdictional purposes under 28 U.S.C. § 1332(a)(1)).

This century-old rule is followed in every circuit in the nation.[1] The Supreme Court cited it with approval as recently as 2017. *Lightfoot*, 137 S. Ct. at 559.

PIIC nevertheless urges this Court to ignore *Bankers' Trust* because "[a] lot has changed since [it] was decided." ECF 55 at 5. However, the only "change" PIIC identifies is the 1958 enactment of 28 U.S.C. § 1332(c), which provides in relevant part that a "corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . .

---

[1] *See, e.g.*, *Fed. Deposit Ins. Corp. v. La Rambla Shopping Ctr.*, 791 F.2d 215, 221 (1st Cir. 1986); *JP Morgan Chase Bank, N.A.*, No. 12-CV-104, 2013 WL 782881, at *1 (D.N.H. Mar. 1, 2013); *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005); *Parks Heritage Fed. Credit Union v. Fiserv Sols.*, No. 16-CV-7734, 2017 WL 74280, at *4 (S.D.N.Y. Jan. 4, 2017); *Little League Baseball. v. Welsh Pub. Grp.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995); *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 639 (E.D. Va. 2006); *Eagle TX I SPE, L.L.C. v. Sharif & Munir Enterprises*, 602 F. App'x 576, 578 (5th Cir. 2015); *Hayward v. Chase Home Fin.*, No. 3:10-CV-2463, 2011 WL 2881298, at *3 (N.D. Tex. July 18, 2011); *Fed. Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 194 (6th Cir. 1989); *Snell v. Wells Fargo Bank*, No. 11-CV-12018, 2012 WL 1048576, at *1 (E.D. Mich. Mar. 28, 2012); *Am. Airlines Fed. Credit Union v. Eck*, No. 18 C 599, 2018 WL 2332065, at *1 (N.D. Ill. May 23, 2018); *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 345 F. Supp. 885, 887 (S.D. Iowa 1972); *Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 492 F.2d 1325, 1329 (9th Cir. 1974); *Multibank 2009-1 RES-ADC Venture, LLC v. CRM Ventures*, LLC, No. 10-CV-02001, 2010 WL 3632359, at *2 (D. Colo. Sept. 10, 2010); *CU Capital Mkt. Sols., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *5 (D. Kan. June 26, 2019); *Walton v. Howard Univ.*, 683 F. Supp. 826, 829 (D.D.C. 1987).

where it has its principal place of business." 28 U.S.C. § 1332(c). "Even after the enactment of § 1332(c)," however, "courts have expressly declined to apply [it] to a federally chartered corporation." *Gladys McCoy Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. CV 09-981-PK, 2010 WL 1838941, at *3 (D. Or. Mar. 30, 2010), *adopted sub nom.* No. CIV. 09-981-PK, 2010 WL 1838937 (D. Or. May 3, 2010) (citations omitted); *see also Navy Fed. Credit Union*, 368 F. Supp. 3d at 896 ("the text and structure of Section 1332(c) suggest that the provision applies only to state-chartered corporations," not federally-chartered corporations); *Burton*, 574 F. Supp. at 521("the amendatory Act of 1958 . . . does not deal with a corporation chartered by an act of Congress.") (citation omitted).

The Supreme Court itself has held that federally-chartered organizations do not "fit" within section 1332(c) because "they are not incorporated by 'any State.'" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). Congress shares the Supreme Court's understanding and, since passing § 1332(c), has therefore expressly deemed certain federally-chartered organizations to be state "citizens" for purposes of diversity jurisdiction. *See, e.g., Wachovia Bank*, 546 U.S. at 306 (28 U.S.C. § 1348 deems national banks to be "citizens" of the states where they are located.")).[2] Because Congress has "confirmed by subsequent congressional enactments," *Amoco Prod. Co. v. S. Ute Indian Tribe*, 526 U.S. 865, 877 (1999), its understanding that § 1332(c) does not extend diversity jurisdiction to federally-chartered organizations, PIIC improperly urges this Court to supplant Congress' intent and render those "subsequently enacted

---

[2] Since 1958, Congress has granted state citizenship to, *inter alia*, farm credit banks, land bank associations, and credit associations, 12 U.S.C. § 2258, savings associations, 12 U.S.C. § 1464(x), Amtrak, 49 U.S.C. §24301(b), and the Telecommunications Development Fund, 47 U.S.C. §614(b).

[citizenship] statute[s]...superfluous," *Navy Fed. Credit Union*, 368 F. Supp. 3d at 898 (§ 1332(c) does not confer diversity jurisdiction over credit union).

In sharp contrast to the federally-chartered organizations to which Congress has granted state "citizenship" for purposes of diversity jurisdiction, Congress has remained silent on USOPC's citizenship, leaving it among the many federally-chartered organizations that are beyond the purview of § 1332(c). *See* Rutter Group Prac. Guide, *Fed. Civ. Proc. Before Trial* (Nat Ed.) Ch. 2C-3 (2019) (identifying American Red Cross, American Legion, Veterans of Foreign Wars, Little League Baseball, and the Tennessee Valley Authority as not subject to diversity jurisdiction). Congress has had ample opportunity to deem USOPC a state "citizen" if it wanted to, as the ASA was not enacted until 20 years after Congress enacted 28 U.S.C. § 1332(c) and was amended significantly in 1998. 36 U.S.C. § 220501, *et seq.* Had Congress wanted to confer Colorado "citizenship" on USOPC for purposes of federal court jurisdiction it would have done so expressly. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Given that Congress has not done so, it would impermissibly supplant Congress' judgment in that regard to construe § 1332(c) as though it had. *See, e.g., Richman v. Straley*, 48 F.3d 1139, 1144 (10th Cir. 1995) (statute does not confer right that Congress did not include).

PIIC's plea to expand 28 U.S.C. § 1332 to include federally chartered organizations generally would subvert Congress' very intent in enacting that statute, which was to *limit* the number of diversity cases adjudicated by federal courts. *Navy Fed. Credit Union*, 368 F. Supp. 3d at 896 (broadly applying 28 U.S.C. § 1332(c) to all federally-chartered organizations would

be contrary to Congress' intent); *see also Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 492 F.2d 1325, 1329 (9th Cir. 1974) ("Congressional attempt to limit federal court jurisdiction would be nullified by defendant's interpretation of diversity jurisdiction which would give federal jurisdictions to almost all suits involving federally chartered corporation").PIIC fares no better when it urges this Court to expand to USOPC a niche, judicially-created exception that some courts have applied to tribal corporations chartered under the Indian Reorganization Act, 25 U.S.C. § 477. This exception appears rooted in *Blackfeet Tribe*, in which the court commented in passing that there could be no diversity jurisdiction because the defendant there, a tribal corporation, only had operations in Montana, where the plaintiff was also based. 353 F. Supp. at 992. Years later the Tenth Circuit cited *Blackfeet Tribe* in dictum for the proposition that a tribal corporation "may be considered a citizen of the state of its principal place of business for diversity jurisdiction purposes." *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993).[3]

No court has ever suggested, much less concluded, that this exception applies to other kinds of federally chartered organizations. It has been applied only to tribal corporations. *See, e.g.*, *Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 693 (7th Cir. 2011) (citations omitted). Indeed, courts in the Tenth Circuit have unanimously concluded that other kinds of federally-chartered corporations are stateless for the purpose of diversity jurisdiction. *See CU Capital Mkt. Sols., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *5 (D. Kan. June 26, 2019) ("federally chartered corporations

---

[3] That comment was dictum because the *Gaines* court actually held there was no diversity jurisdiction since the defendant was not a corporation at all. *Id.* at 730; *see also Bates v. Dep't of Corr. of State of Kan.*, 81 F.3d 1008, 1011 (10th Cir. 1996) (dictum is not authority).

are not citizens of any state, and they thus operate as diversity-destroying entities."); *Multibank 2009-1 RES-ADC Venture, LLC v. CRM Ventures, LLC*, No. 10-CV-02001-PAB-CBS, 2010 WL 3632359, at *2 (D. Colo. Sept. 10, 2010) ("Federal courts do not have diversity jurisdiction over federally-chartered corporations such as the FDIC because such corporations have no state citizenship."); *Fed. Nat'l Mortg. Ass'n*, 2019 WL 4410009, at *2 (same).

*World Fuel Services v. Nambe Pueblo Development Corporation*, 362 F. Supp. 3d 1021 (D.N.M. 2019), a case PIIC relies on, ECF 55 at 8, is not to the contrary. There, the court actually confirmed that the "Supreme Court has held that a federally chartered corporation is *not* a citizen of any one state." *World Fuel Servs.*, 362 F. Supp. 3d at 1085 (citing *Bankers' Trust*, 36 S.Ct. at 572-73) (emphasis added). It observed merely that § 1332 has been construed differently for tribal corporations, *id.* at 1086, a point not relevant here for the reasons just discussed.

PIIC also mistakenly relies on *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). ECF 55 at 6. But that case did not address whether § 1332(c) applied to federally chartered corporations. *N. Virginia Foot & Ankle Assocs., LLC v. Pentagon Fed. Credit Union*, No. RWT 10CV1640, 2011 WL 280983, at *4 (D. Md. Jan. 26, 2011) (nor did "*Hertz* in any way mention the potential applicability of its holding to federally-chartered corporations."). Rather, *Hertz* clarified § 1332(c) in the context of ordinary state law corporations. *Hertz*, 559 U.S. at 94. Accordingly, *Hertz* has no relevance here.

Against the overwhelming weight of the foregoing authority, PIIC cites to a single unpublished decision finding that the court had jurisdiction to approve an agreed class settlement. ECF 55 at 8 (citing *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2019 WL 2269958 (S.D. Cal. May 28, 2019)). Even there the court recognized that "courts have

9

uniformly construed § 1332(c) to apply only to companies incorporated under state law and thus...adhere to the general rule that federally chartered companies are ineligible for diversity jurisdiction." *Id*. at *6 (citation omitted). But the court in *Lloyd* was "reticent to depart from its earlier assumption that diversity jurisdiction exists over this action with respect to Navy Federal" for the administrative purpose of granting an unopposed motion for approval of a class settlement that would result in voluntary dismissal of the case. *Id.* Given the context, the lack of supporting reasoning, the uniformity of the law to the contrary, and that *Lloyd* is not binding on this Court, USOPC respectfully submits that *Lloyd* does not state any rule of decision that applies here.

For the foregoing reasons, USOPC respectfully submits that this Court should find that 28 U.S.C. 1332(c) does not confer diversity jurisdiction over this matter.

**B.     The So-Called "Localization Exception" Does Not Confer Subject Matter Jurisdiction.**

PIIC also argues that the requirements of diversity jurisdiction are met because USOPC is "localized" in Colorado. ECF 55 at 9. PIIC is wrong.

*a)     The Localization Exception Represents An Unauthorized Judicial Expansion Of Subject Matter Jurisdiction.*

The "localization exception" was "judicially created . . . [to] extend[] diversity jurisdiction to federally chartered corporations by deeming such corporations citizens of states where their business was localized." *Arlington Cmty.*, 57 F. Supp. 3d at 593 (citations omitted). The Tenth Circuit has never recognized this exception, and doing so would violate the "well-established" rule that "statutes conferring jurisdiction upon the federal courts . . . are to be narrowly construed in light of [federal courts'] constitutional role as limited tribunals."

*Pritchett*, 420 F.3d at 1094-95. Indeed, at least one other court has refused to apply the "localization exception" on the ground that it represents an improper judicial expansion of subject matter jurisdiction. *Navy Fed. Credit Union, LP*, 368 F. Supp. 3d at 900 ("diversity jurisdiction cannot be established except on the terms set forth in § 1332(c)."). This Court should do the same.

### b) USOPC Is Not A "Localized" Corporation.

Even if the Court were to consider this exception, it should find that USOPC is not a localized corporation. Under one version of the exception, "[i]f the activities of a federally chartered corporation are limited to a single state, either factually or by charter, then the corporation is a citizen of that state." *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995) (citing *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 454-56 (3d Cir. 1959)). PIIC concedes that USOPC is not a "localized" corporation in this sense. ECF 55 at 9 (citing *Burton*, 574 F. Supp. at 521) (finding that "[b]oth under the terms of its charter and as a result of its multi-state, if not nationwide, activities, the USOPC cannot be considered to be 'localized' in Colorado. The USOPC simply does not exhibit the narrow geographic scope required to support a finding of localization."); *see also id.* at 3 (admitting that USOPC has operations in other states that receive 30% of USOPC's budget).

PIIC therefore urges this Court to apply an even more expansive version of the "localization exception" by looking to "a variety of factors . . . such as the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature." ECF 55 at 10 (citing *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d

603, 606 (11th Cir. 1995)). This expansive doctrine is not grounded in the text of § 1332 or any Supreme Court precedent. It is therefore contrary to Tenth Circuit precedent, which requires *all* statutes to be enforced pursuant to their "plain language," *U.S. v. Figueroa-Labrada*, 780 F.3d 1294, 1298 (10th Cir. 2015), and jurisdictional statutes to be narrowly construed, *Pritchett*, 420 F.3d at 1094-95.

Even if this Court were to adopt the Eleventh Circuit's version of the "localization exception," PIIC still could not meet its burden of demonstrating that USOPC is a "localized" corporation. *Auriemma Consulting Group, Inc. v Universal Savings Bank, F.A.*, 367 F. Supp. 2d 311, 314 (E.D.N.Y. 2005) (proponent bears burden of proving localization). A finding of localization even under the Eleventh Circuit's test faces a high bar, and can be met only in exceptional cases where a corporation's charter and its activities clearly indicate that it is "localized" in a *single* state. For example, in *Loyola*, the bank was considered "localized" in Maryland where it was headquartered and had 30 of 31 of its branch offices. *Loyola*, 58 F.3d at 606. In *Arlington Community*, a credit union was "localized" in Virginia where it had its headquarters, *all* of its branch offices, and held itself out as serving those who "'live, work, worship, go to school, volunteer, or consistently do business in Arlington County, [Virginia].'" 57 F. Supp. 3d at 595.

Conversely, where federally chartered corporations have a national purpose, and are therefore "national in nature," the corporation is not localized, even if it is primarily located in a single state. *Loyola*, 58 F.3d at 606. Thus, even when Congress expressly designated a principal office for a federally-chartered corporation, it still was not "localized" because it was "established in order to assist user-owned cooperatives, on a nationwide basis" and was

"authorized to 'make loans and offer its services throughout the United States.'" *Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank*, 285 F. Supp. 2d 719 (E.D. Va. 2003) (citations omitted). Or, as another example, even though a federally-chartered bank had extensive ties to Wisconsin, it still was not "localized" because "the purpose set forth in [the corporation's] charter is broad and in no way limits the bank's activities to a single state" and because it had additional offices in other states. *Auriemma*, 367 F. Supp. 2d at 314.

Here, USOPC is quintessentially national in nature, having been vested by Congress with a nationwide mission and authority to "establish national goals for amateur athletic activities," "coordinate and develop amateur athletic activity in the United States" and "promote and support amateur athletic activities involving the United States and foreign nations." 36 U.S.C. § 220503(1)-(15). Among other activities consistent with its non-"localized" mission, USOPC directly operates a large training facility in Lake Placid, New York, supports nearly a dozen other training facilities through the country, maintains offices in more than one state, works with 50 NGBs overseeing athletes and events throughout the country and internationally, and has operations and contracting partners throughout the world. McCleary Decl. at ¶¶3-10. Like most corporations including federally chartered ones, USOPC is headquartered in a single city (which calls itself Olympic City, *USA*), many of its employees unsurprisingly live nearby, and it utilizes choice of law provisions in its contracts. ECF 55 at 7. However, if these facts were sufficient to satisfy the "localization" exception, then the exception would swallow the well-established rule that federally-chartered corporations are stateless for purpose of diversity jurisdiction, as explained above. Accordingly, even under the *Loyola* test, USOPC is not "localized," and for that additional reason there can be no subject matter jurisdiction here.

### C. USOPC's Federal Charter Does Not Confer Jurisdiction.

PIIC argues that subject matter jurisdiction exists unless the ASA expressly "prohibits federal court jurisdiction." ECF 55 at 14. PIIC has this backwards. Subject matter jurisdiction does not exist in the absence of affirmative Congressional action, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), and "[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of federal courts]," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specific to federal charters, the Supreme Court has ruled that there is no subject matter jurisdiction unless the charter states so "specifically," *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255 (1992), and that any doubt should be construed against jurisdiction, *Lightfoot*, 137 S. Ct. at 561 (no subject matter jurisdiction even though Fannie Mae's charter authorized suit "'in any court of competent jurisdiction, State or Federal'").

Here, USOPC's federal charter does not permit PIIC to file suit in federal court because, by its plain language, it only grants USOPC a right to *remove* actions to federal court. 36 U.S.C. § 220505. Accordingly, absent an independent source of subject matter jurisdiction, of which there is none here, or a removal petition by USOPC, there is no subject matter jurisdiction. *See Gonzalez v. United States Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1289 (S.D. Fla. 2019) ( 36 U.S.C. § 220505 "is only applicable where a 'civil action [is] brought in a State court against the corporation'" and removal is sought at "'the request of the corporation.'"); *see also* S.R. S121777 (1998) (Congress' stated intent was to "allow the USOPC to remove certain lawsuits against it to federal court," not to broadly confer subject matter jurisdiction). Accordingly, USOPC's federal charter does not confer subject matter jurisdiction.

### IV. CONCLUSION

In sum, neither of PIIC's stated grounds for subject matter jurisdiction withstand scrutiny. Accordingly, for the foregoing reasons, the USOPC respectfully requests this Court to dismiss the Complaint for lack of subject matter jurisdiction.

s/ Jose A. Ramirez
*Jose A. Ramirez*
*Catherine C. Crane*
Holland & Hart LLP
6380 S Fiddlers Green Circle, Suite 500
Greenwood Village, CO 80111
Phone (303) 290-1605
E-mail: jramirez@hollandhart.com
E-mail: ccrane@hollandhart.com

*Reynold L. Siemens*
*Jeffrey A. Kiburtz*
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone (424) 332-4800

Attorneys for Defendant United States Olympic & Paralympic Committee

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed using the Court's CM/ECF filing system, which automatically sends notice of filing to all attorneys of record, on January 17, 2020.

*/s/ Jose A. Ramirez*

Jose A. Ramirez

14084591_v1