IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01231-CMA-KMT

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE,

    Defendant.

---

**ORDER ADOPTING THE JANUARY 28, 2020 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE KATHLEEN M. TAFOYA AND GRANTING DEFENDANT'S MOTION TO VACATE**

---

This matter is before the Court on review of the Recommendation of United States Magistrate Judge ("the Recommendation") (Doc. # 59), wherein Magistrate Judge Kathleen M. Tafoya recommends that the instant action be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the following reasons, Plaintiff Philadelphia Indemnity Insurance Company's objections are overruled, and the Court affirms and adopts the Recommendation. Accordingly, the Court grants Defendant United States Olympic & Paralympic Committee's Motion to Vacate Order Dated October 25, 2019 ("Motion to Vacate"). (Doc. # 61.)

### I.     BACKGROUND

Judge Tafoya described the relevant background of this case in her Order to Show Cause (Doc. # 51 at 2–2) and the Recommendation (Doc. # 59 at 1–2), which is

incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B) (2018); Fed. R. Civ. P. 72(b). The Court therefore recounts only the facts necessary to address Plaintiff's Objections to the Recommendation and Defendant's Motion to Vacate.

Plaintiff initiated this lawsuit in federal court on the basis of diversity jurisdiction and does not assert that the Court has federal question jurisdiction. (Doc. # 1 at 1–2.) During the December 10, 2019 Scheduling Conference before Judge Tafoya, Defendant United States Olympic Committee ("USOC"), a federally chartered corporation, indicated that the Court lacks subject matter jurisdiction over this action under either 28 U.S.C. § 1332(c) or the Ted Stevens Amateur Sports Act ("ASA"), 36 U.S.C. § 220505(b)(9), because it is not a citizen of any state. (Doc. # 49 at 3.) Subsequently, Judge Tafoya *sua sponte* ordered Plaintiff to show cause why the instant case should not be dismissed for lack of subject matter jurisdiction. (Doc. # 51.) Plaintiff filed a Response to Judge Tafoya's Order to Show Cause on January 3, 2020 (Doc. # 55), and USOC filed a Statement Regarding Subject Matter Jurisdiction on January 17, 2020 (Doc. # 56). Judge Tafoya granted leave for Plaintiff to file a Reply to Defendant's Statement, which Plaintiff filed on January 24, 2020. (Doc. # 57-1.) On January 28, 2020, Judge Tafoya issued her Recommendation, in which she recommends that the instant action be dismissed because Plaintiff has failed to establish that the Court has subject matter jurisdiction. (Doc. # 59.)

On February 6, 2020, Plaintiff timely filed its objection to Judge Tafoya's Recommendation, contending that Judge Tafoya: (1) misinterpreted 28 U.S.C. § 1332(c) in concluding that it does not apply to federally chartered corporations; (2)

improperly concluded that the ASA prohibits citizenship over USOC in Colorado; and (3) erroneously found that USOC is not localized in Colorado. (Doc. # 60.) Defendant United States Olympic & Paralympic Committee's Response in Support of Magistrate Judge Tafoya's Recommendation to Dismiss Action followed. (Doc. # 62.) Subsequently, USOC filed its Motion to Vacate (Doc. # 61), in which it argues that if this Court adopts the Recommendation, the Court should also vacate Judge Tafoya's October 25, 2019 Order denying Defendant's Motion to Stay Proceedings (Doc. # 23). Plaintiff's Response to Defendant's Motion to Vacate Order Dated October 25, 2019 (ECF 23) followed. (Doc. # 63.) For the following reasons, the Court adopts the Recommendation and grants Defendant's Motion to Vacate.

## II.  STANDARDS OF REVIEW

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3)*.*

### B. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Federal subject matter jurisdiction arises under 28 U.S.C. § 1332(a)(1) if the

amount in controversy exceeds $75,000 and the conflict is between citizens of different states. A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." § 1332(c). "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Fed. R. Civ. P. 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). A federal court must satisfy itself as to its own jurisdiction and may take *sua sponte* action to do so. *See Citizens Concerned for Separation of Church & State v. City & Cty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980). A court should not proceed without having first assured itself that jurisdiction exists. *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005). "If [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Dismissal under Fed. R. Civ. P. 12(b)(1) is without prejudice because judgment is not made on the merits of a plaintiff's case. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). Rather, dismissal under Fed. R. Civ. P. 12(b)(1) is based

on a determination that the court lacks authority to adjudicate a matter on its merits. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994).

### III.     ANALYSIS

The Court considers three issues in analyzing whether it possesses subject matter jurisdiction over the instant action: (1) whether diversity jurisdiction over federally chartered corporations such as USOC arises under 28 U.S.C. § 1332(c); (2) whether Congress conferred diversity jurisdiction over USOC through the ASA, 36 U.S.C. §§ 220501–220512; and (3) whether the Court should apply the judicially created "localization exception" to conclude that USOC is a citizen of Colorado for diversity jurisdiction purposes. Ultimately, the Court concludes that it does not have diversity jurisdiction over USOC and, therefore, that it lacks subject matter jurisdiction over the instant action.

#### A.     JURISDICTION UNDER 28 U.S.C. § 1332(c)

Plaintiff's first objection is to Judge Tafoya's conclusion that 28 U.S.C. § 1332(c) does not apply to federally chartered corporations. The Court overrules Plaintiff's objection and affirms Judge Tafoya's conclusion that § 1332(c) is inapplicable to USOC.

USOC is a federally chartered corporation. 36 U.S.C. § 220502. Therefore, it "is incorporated under acts of Congress rather than state laws, and . . . generally has national citizenship but no state citizenship." *Fed. Nat'l Mortg. Ass'n v. Amerson*, No. 19-CV-02361-PAB, 2019 WL 4410009, at *2–3 (D. Colo. Sept. 16, 2019) (brackets omitted) (citing *Hayward v. Chase Home Fin., LLC*, 2011 WL 2881298, at *3 (N.D. Tex. July 18, 2011)). "In a suit where one of the [parties] has only national citizenship but no

state citizenship, diversity is impossible because the suit is not between citizens of different states." *Id.*

The Supreme Court first concluded that federally chartered corporations have no state citizenship in 1916 in *Bankers Trust Co. v. Tex. & Pac. R.R. Co.*, 241 U.S. 295, 309 (1916). Plaintiff argues that *Bankers Trust* is no longer good law because Congress's 1958 amendment to 28 U.S.C. § 1332 conferred diversity jurisdiction over federally chartered corporations. Importantly, Plaintiff's position is contrary to the great weight of authority.

First, Plaintiff's position is unsupported by this circuit's precedent, which has reliably applied *Bankers Trust* in concluding that federally chartered corporations do not have state citizenship under § 1332. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n*, 2019 WL 4410009, at *2–3; *Multibank 2009-1 RES-ADC Venture, LLC v. CRM Ventures, LLC*, No. 10-CV-02001-PAB-CBS, 2010 WL 3632359, at *2 (D. Colo. Sept. 10, 2010) (citations omitted) ("Federal courts do not have diversity jurisdiction over federally-chartered corporations such as the FDIC because such corporations have no state citizenship."); *CU Capital Mkt. Sols., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *5 (D. Kan. June 26, 2019) (citations omitted) (noting that "traditionally, federally chartered corporations are not citizens of any state, and they thus operate as diversity-destroying entities"). The Tenth Circuit cases on which Plaintiff relies to argue the contrary concern a limited exception applied to tribal corporations organized under the Indian Reorganization Act, 25 U.S.C. § 477.[1] This exception is

---

[1] *See, e.g.*, *Enterprise Elec. Co. v. Blackfeet Tribe of Indians*, 353 F. Supp. 991, 992 (D. Mont. 1973); *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993).

inapplicable to the instant case, and the Court declines to broaden the exception to apply to USOC, which was organized under a different statute. Further, Plaintiff's position is contrary to the great weight of authority in other circuits.[2] Moreover, the Supreme Court has favorably cited to its decision in *Bankers Trust* in recent history and continues to apply *Bankers Trust*'s reasoning. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 555 (2017) (noting that the court held the sue-and-be-sued clause of the federal charter at issue in *Bankers Trust* did not grant subject matter jurisdiction); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) ("Federally chartered national banks do not [fit comfortably within § 1332(c)(1)], for they are not incorporated by 'any State.'").[3]

---

[2] *See, e.g.*, *Fed. Deposit Ins. Corp. v. La Rambla Shopping Ctr., Inc.*, 791 F.2d 215, 221 (1st Cir. 1986) (collecting cases); *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 368 F. Supp. 3d 889, 893 (E.D. Va. 2019) (concluding "(1) that § 1332(c) does not apply to federally chartered corporations and Navy Federal, as a federally chartered corporation, cannot establish that it is a citizen of any state under the terms of § 1332(c); and (2) diversity jurisdiction may not be established outside the terms of Section 1332(c), through the 'localization test' or otherwise."); *Am. Airlines Fed. Credit Union v. Eck*, No. 18 C 599, 2018 WL 2332065, at *1–2 (N.D. Ill. May 23, 2018) (finding that federal credit union with a principal place of business in Texas did not qualify as Texas citizen); *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg., Inc.*, 415 F. Supp. 2d 636, 639 (E.D. Va. 2006) ("While the Supreme Court has never addressed this issue, the lower courts have uniformly construed § 1332(c) to apply only to companies incorporated under state law and thus courts continue to adhere to the general rule that federally chartered companies are ineligible for diversity jurisdiction."); *Petrousky v. Civil Air Patrol, Inc.*, 1998 WL 213726, at *2 (N.D.N.Y. Apr. 10, 1998) (holding that the Civil Air Patrol, a federally chartered corporation, has no state citizenship); *Little League Baseball, Inc. v. Welsh Publ'g Group, Inc.*, 874 F. Supp. 648, 655 (M.D. Pa. 1995) (holding the same as to Little League Baseball); *Burton*, 574 F. Supp. at 522 (holding the same as to USOC); *Crum v. Veterans of Foreign Wars*, 502 F. Supp. 1377, 1381 (D. Del. 1980) (holding the same as to the Veterans of Foreign Wars); *Monsanto Co. v. Tenn. Valley Auth.*, 448 F. Supp. 648, 651 (N.D. Ala. 1978) (holding the same as to the Tennessee Valley Authority); *Rice v. Disabled Am. Veterans*, 295 F. Supp. 131, 134 (D.D.C. 1968) (holding the same as to the Disabled American Veterans); *Harris v. Am. Legion*, 162 F. Supp. 700, 710 (S.D. Ind. 1958) (holding the same as to the American Legion), *aff'd*, 261 F.2d 594 (7th Cir. 1958).

[3] Additionally, "there is no evidence that Congress ever considered the applicability of the 1958 amendment to federal corporations." *Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 519

Therefore, the Court concludes that § 1332(c) does not confer diversity jurisdiction over USOC. USOC, pursuant to *Bankers Trust*, has national citizenship and no state citizenship for the purposes of diversity jurisdiction.

## B. JURISDICTION UNDER THE ASA

Next, Plaintiff objects to Judge Tafoya's interpretation of the ASA and her conclusion that the ASA does not confer Colorado state citizenship on USOC. The Court agrees with Judge Tafoya's conclusion that the ASA does not confer state citizenship on USOC.

Congress may confer diversity jurisdiction over a federally chartered corporation by statute where it specifically provides for state citizenship or specifically characterizes the federally chartered corporation as a body corporate of a particular state. *See, e.g.*, *Wachovia Bank*, 546 U.S. at 306 (quoting 28 U.S.C. § 1348) (noting that, for diversity jurisdiction purposes, "Congress has discretely provided that national banks 'shall ... be deemed citizens of the States in which they are respectively located.'"). To determine if Congress conferred diversity jurisdiction over USOC, the Court looks to the following provision of 36 U.S.C. § 220505:

> [USOC may] sue and be sued, except that any civil action brought in a State court against the corporation and solely relating to the corporation's responsibilities under this chapter shall be removed, at the request of the corporation, to the district court of the United States in the district in which

---

(C.D. Cal. 1983) (first citing Moore & Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited,* 77 Harv.L.Rev. 1426, 1431 (1964); then citing J. Moore, *Moore's Federal Practice,* ¶ 0.77[2.–4] at 717.50 (2d ed. 1964) ("In brief, the amendatory Act of 1958 . . . does not deal with a corporation chartered by an act of Congress.")). "Rather, 'Congress probably intended the 1958 amendment to affect the jurisdictional status of state-incorporated companies only, leaving the status of federal corporations to receive further elaboration by the federal courts.'" *Id.* (citing Moore & Weckstein, *supra,* at 1438).

>the action was brought, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenship of the parties involved . . . .

36 U.S.C. § 220505(9). Upon review of the statute, it is clear that Congress granted USOC the right to remove a given lawsuit against it to federal court; however, it did not specifically provide state citizenship to USOC or specifically provide for diversity jurisdiction over USOC in federal courts.[4] Given that the ASA was enacted post-*Bankers Trust* and the cases that followed, the Court assumes that Congress was aware of *Bankers Trust* and that, to deviate from the rule that federally chartered corporations do not have state citizenship, it would need to specify that intent. *See Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (citing *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266–67 (1979)) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Therefore, because Congress did not specify the intent to provide state citizenship to USOC, the Court finds that the ASA did not confer diversity jurisdiction over USOC.

The Court finds strong support for its conclusion in other acts of Congress that explicitly created state citizenship for certain federally chartered organizations following the 1958 amendment of § 1332. *See, e.g.*, 12 U.S.C. § 1464(x) (amended in 2006 to add subsection x, titled "Home State citizenship," which states as follows: "In determining whether a Federal court has diversity jurisdiction over a case in which a

---

[4] To the extent the phrase "without regard to the amount in controversy or citizenship" creates any "ambiguity as to whether the instant statute confers federal jurisdiction over this case, [the Court is] compelled to adopt a reasonable, narrow construction [of the statute]." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005).

Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office."); 12 U.S.C. § 2258 (providing a farm credit administration organization "shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located"); 47 U.S.C. § 614(b) (enacted in 1996 and providing that the Telecommunications Development Fund "shall maintain its principal office in the District of Columbia and shall be deemed, for purposes of venue and jurisdiction in civil actions, to be a resident and citizen thereof"). The explicit grant of state citizenship in these federal charters, together with no such grant in the ASA, supports the Court's conclusion that Congress did not confer diversity jurisdiction over USOC through the ASA.[5]

## C.   THE LOCALIZATION EXCEPTION

Some courts have recognized an exception to the general rule that a federally chartered corporation has no state citizenship where the corporation is "localized" in a certain state. This exception was judicially created by the District of Oregon in 1956 to extend diversity jurisdiction to federally chartered corporations. *Arlington Cmty. Fed.*

---

[5] Plaintiff argues that Congress did not prohibit diversity of citizenship or limit federal court jurisdiction in the ASA. (Doc. # 55 at 14); (Doc. # 60 at 10–11). Plaintiff's emphasis on language prohibiting diversity of citizenship or limiting jurisdiction is misplaced. The Court has previously concluded that USOC, as a federally chartered corporation, has national citizenship only and that this Court does not have diversity jurisdiction over USOC under § 1332. Therefore, in order for this Court to have diversity jurisdiction over this action, Congress must have specifically conferred diversity jurisdiction over USOC through the ASA. The absence of language to the contrary does not create jurisdiction. Further, the Court rejects Plaintiff's suggestion that the provision of the ASA that requires USOC to maintain an agent for service of process in Colorado, 36 U.S.C. § 220510, is equivalent to Congress explicitly granting USOC state citizenship for purposes of diversity jurisdiction. (Doc. # 60 at 11.)

*Credit Union v. Berkley Reg'l Ins. Co.*, 57 F. Supp. 3d 589, 593 (E.D. Va. 2014) (citing *Elwert v. Pacific First Fed. Sav. & Loan Ass'n,* 138 F. Supp. 395 (D. Or. 1956)) (discussing history of localization exception). There are two formulations of the localization exception. The older and more restrictive standard requires the corporation be confined to one particular state in order to be localized.[6] Under this formulation of the exception, where the corporation's activities are distributed among several states, the corporation's citizenship is national only. *Engelmeyer v. Prod. Credit Ass'n of Midlands*, 652 F. Supp. 1235, 1236–37 (D.S.D. 1987) (citations omitted). "Such a corporation has no state citizenship for jurisdictional purposes unless Congress so enacts." *Id*.

Under the second and more expansive formulation of the localization exception articulated by the Eleventh Circuit in *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995), a corporation may "be considered a citizen of one state for diversity purposes if the corporation's activities are 'localized' in that state, despite some out-of-state business activities. The activities do not have to be 100% localized in order to trigger this exception." *Id.* Pursuant to *Loyola*, "[d]etermining whether a federal corporation is localized for diversity purposes should not be simply a question as to whether that corporation's activities are exclusive to one state." The following factors are relevant to the localization inquiry: "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in

---

[6] *See, e.g.*, Wright, Miller & Cooper, *Federal Practice & Procedure,* Jurisdiction Second, § 3627 (1984); *Burton*, 574 F. Supp. at 519, 521–22; *Monsanto,* 448 F. Supp. at 650; *Hayward*, 2011 WL 2881298, at *3 (citations omitted) ("a federal corporation that limits its business activities to only one state is a citizen of that state for jurisdictional purposes").

different states, and any other data providing evidence that the corporation is local or national in nature." *Id.*

Plaintiff urges the Court to apply the Eleventh Circuit's articulation of the localization exception and find that USOC is sufficiently localized in Colorado to possess Colorado citizenship for purposes of diversity jurisdiction. (Doc. # 55 at 9–12); (Doc. # 57-1 at 10–11); (Doc. # 60 at 11–13). However, the Supreme Court and the Tenth Circuit have not adopted the localization exception. The Court agrees with USOC that applying the localization exception here would be contrary to the well-established rule that "statutes conferring jurisdiction upon the federal courts . . . are to be narrowly construed in light of [federal courts'] constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (first citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109 (1941); then citing *United States ex rel. King v. Hillcrest Health Ctr.,* 264 F.3d 1271, 1280 (10th Cir. 2001)). As such, the Court declines to adopt the localization exception.

However, even if the Court were to adopt the localization exception as articulated in *Loyola*, it would find that USOC is not sufficiently localized to warrant Colorado citizenship for the purposes of diversity jurisdiction. Although USOC conducts many activities in Colorado,[7] it has a national purpose and its operations are national in scope. As to USOC's operations, it has a branch-campus located in New York, spends

---

[7] USOC has its principal place of business in Colorado (Doc. # 55 at 6), and has licensed Colorado Springs to use the moniker "Olympic City, USA" (*id.* at 7). At least two-thirds of USOC's budget is allocated to operations in Colorado (*id.*), and it has a large facility including numerous sports training operations in Colorado (*id.*). USOC lists an agent to receive service of process in Colorado as required by § 220510. (*Id.* at 11.)

about one-third of its training facilities budget on operations outside of Colorado (Doc. # 55 at 7), has business offices in New York and Washington, D.C. (Doc. # 56-1 at 3), and conducts operations throughout the United States and overseas (*id.* at 3–4). With regard to USOC's purpose, the language of § 220503 articulates USOC's national and international goals. They include coordinating efforts regarding the United States participation in the Olympic Games, promoting amateur athletics nationally, promoting physical fitness and public participation in amateur athletics, resolving disputes involving national governing bodies, exclusively controlling all matters relating to the participation of the United States in the Olympic Games, recruiting the best amateur athletes to participate in the Olympic Games on behalf of the United States, and promoting amateur athletics involving the United States. *Id.* USOC's national operations and purpose render it ineligible for the localization exception. *See Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 640 (E.D. Va. 2006) (finding corporation was ineligible for localization exception under the *Loyola* standard where the corporation's operations were national in scope); *see also Little League Baseball, Inc. v. Welsh Pub. Grp.*, Inc., 874 F. Supp. 648, 654 (M.D. Pa. 1995) (declining to apply localization exception where federally chartered organization's activities were "conducted regularly over a wide area, well beyond the territorial limits of the Commonwealth of Pennsylvania.").[8]

---

[8] By contrast, courts have applied the localization exception where federally chartered organizations' activities were located almost entirely in the state of citizenship and their charters demonstrated localized purpose. For example, in Arlington Cmty. Fed. Credit Union, 57 F. Supp. 3d 589, the court found a federal credit union to be localized in Virginia where the credit union's principle place of business was located in Virginia, all of the credit union's branches were in Virginia, 78% of the credit union's members listed Virginia as their state of residence,

In summary, the Court finds that USOC is not a citizen of Colorado for the purpose of diversity jurisdiction. The Court does not have diversity jurisdiction over USOC through 28 U.S.C § 1332(c) or the ASA. Even if this Court were to adopt the *Loyola* localization exception, the exception would not apply to USOC. Accordingly, the Court lacks subject matter jurisdiction over the instant action.

## D.   USOC'S MOTION TO VACATE

Because the Court has determined that it lacks subject matter jurisdiction over this case, Judge Tafoya's Order (Doc. # 23), which denied Defendant's Motion to Stay Proceedings (Doc. # 10), should be vacated in the interests of justice. It is well settled that judgments entered without jurisdiction are generally void. *See, e.g.*, *Costello v. U.S.*, 365 U.S. 265, 285 (1961) (including "lack of jurisdiction over the person or subject matter" among the "fundamental jurisdictional defects which render a judgment void"); *Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980) ("It is well-established that a judgment entered without . . . jurisdiction . . . is void."). The same reasoning that supports voiding judgments entered without jurisdiction supports voiding the interlocutory order at issue, which likewise was entered without subject matter jurisdiction. Vacatur would prevent Judge Tafoya's order, which is "unreviewable because of mootness, from spawning any legal consequences."

---

and 86% of the credit union's deposit account balance was attributable to Virginia residents. *Id.* at 595. Similarly, in *TCT Fed. Credit Union v. Cumis Ins. Soc., Inc.*, No. 1:10-CV-150 FJS/DRH, 2011 WL 817496 (N.D.N.Y. Mar. 2, 2011), a credit union was found to be localized in New York because more than 99% of its loans were secured on property in New York, 96% of its membership lived within New York, only 2.9% of its total deposits were from members outside New York, and only 2.2% of total loans were to out-of-state members. Such strong evidence of localization is absent in the instant case.

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1132 (10th Cir. 2010). On the other hand, allowing Judge Tafoya's order to remain citable by Plaintiff and other insurers would prejudice USOC. In light of the foregoing, the Court grants USOC's Motion to Vacate.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Plaintiff's Objections to the Recommendation (Doc. # 60) are OVERRULED;

- the Recommendation of Magistrate Judge Tafoya (Doc. # 59) is AFFIRMED AND ADOPTED as an Order of this Court;

- Defendant United States Olympic & Paralympic Committee's Motion to Vacate Order Dated October 25, 2019 (Doc. # 61) is GRANTED and Judge Tafoya's Order at ECF Doc. # 23 is hereby VACATED;

- accordingly, Defendant United States Olympic Committee's Objections to Denial of Motion to Stay Action (Doc. # 25) is MOOT;

- this action is DISMISSED WITHOUT PREJUDICE for lack of subject

---

[9] Plaintiff opposes Defendant's Motion on the basis that the Motion is premature because the Court had not yet ruled on Judge Tafoya's Recommendation at the time of the Motion's filing. As the Court has now determined that it must dismiss the instant case, Defendant's Motion is ripe for the Court's consideration.

matter jurisdiction; and

- the Clerk of Court is respectfully directed to close this case.

DATED: August 18, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge